# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# MISSOULA DIVISION

| | |
|---|---|
| LLOYD SCOTT MAIER,<br><br>Plaintiff,<br><br>vs.<br><br>CRAIG THOMAS, MIKE MAHONEY, BRENT LIGHT, MARK MOZER, and CASCADE COUNTY,<br><br>Defendants. | Cause No. CV 11-00052-M-DWM-JCL<br><br>ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO DISMISS COMPLAINT |

Currently pending are Plaintiff Lloyd Maier's Motion to Proceed in Forma Pauperis (Dkt. 1) and a proposed civil rights Complaint (Dkt. 2).

## I. STATEMENT OF THE CASE

### A. Jurisdiction

Maier filed his Complaint pursuant to 42 U.S.C. § 1983 alleging Defendants violated his rights under the Fourth and Eighth Amendments to the United States Constitution. Accordingly, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### B. Parties

Maier is a state prisoner incarcerated at the Montana State Prison in Deer Lodge, Montana. Maier named Craig Thomas, former Secretary for the Montana

Board of Pardons; Mike Mahoney, Warden of Montana State Prison; Brent Light, prosecutor Cascade County; Mark Mozer, prison psychologist; and Cascade County, Montana as Defendants.

### C. Maier's Allegations

Maier contends he was denied clemency hearings based upon false information contained in his criminal history and prison records in 2005 and 2010. He contends Defendants Brent Light and Cascade County falsified his criminal history and Defendant Mark Mozer wrote a psychological evaluation report containing false information. He contends these falsehoods contributed to him being denied executive clemency on two occasions and being denied timely custody reductions.

## II. MOTION TO PROCEED IN FORMA PAUPERIS

Maier submitted a declaration and account statement sufficient to make the showing required by 28 U.S.C. §1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

Pursuant to 28 U.S.C. § 1915(b)(1), Maier is required to pay the statutory filing fee of $350.00. Maier submitted account statements showing average monthly deposits of $257.25 over the six months immediately preceding the filing of this action. Therefore, an initial partial filing fee of $51.45 will be assessed by

this Order. *See* 28 U.S.C. § 1915(b)(1)(B) (allowing an assessment in the amount of 20% of the prisoner's average monthly deposits). By separate order, the Court will direct the appropriate agency to collect the initial partial filing fee from Maier's account and forward it to the Clerk of Court.

Thereafter, Maier will be obligated to make monthly payments of 20% of the preceding month's income credited to Maier's prison trust account. The percentage is set by statute and cannot be altered. *See* 28 U.S.C. § 1915(b)(2). By separate order, the Court will direct the agency having custody of Maier to forward payments from Maier's account to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## III. PRESCREENING

### A. Standard

As Maier is a prisoner proceeding in forma pauperis, his Complaint is subject to screening under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A. Sections 1915A(b) and 1915(e)(2)(B) allow for the dismissal of a pro se prisoner complaint before it is served upon the defendants if it is frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint is frivolous if it "lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation omitted). Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'." *Erickson v. Pardus*, 551, U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Cf*. Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Although the statute requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d. at 1127 (*quoting Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend will not be denied a pro se

4

litigant unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (*citing Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

Maier complains about alleged inaccuracies in his criminal history and in a psychological report. Liberally construed, he also seems to bring a clemency due process claim and a custody reduction due process claim. The Court will examine each claim in turn.

**B. False Criminal History**

**1. *Heck v. Humphrey*, 512 U.S. 477 (1994)**

Although couched in terms of being denied clemency hearings, Maier's first claim appears to be that Defendants Brent Light and Cascade County falsified his criminal history. Specifically, Maier alleges that in 1996 Defendant Brent Light impermissibly changed his criminal history to indicate a 1984 theft conviction was an adult conviction when, in fact, it was a 1980 juvenile conviction. He contends Defendant Light made the change so that he could pursue a persistent felony offender charge against Maier. Maier alleges Light's actions caused him to be denied both Executive Clemency in 2005 and 2010 and lower custody levels during his incarceration. (Court Doc. 2, p. 6).

Maier's claims regarding the alleged falsification of his criminal history are

barred by both the *Heck* doctrine and the applicable statute of limitations.

In *Heck v. Humphrey*, the United States Supreme Court held that "in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal," or otherwise declared invalid, called into question by the issuance of a habeas writ, or expunged. *Heck*, 512 U.S. at 486-87 (1994). A claim challenging the legality of a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Heck,* 512 U.S. at 487; *Edwards v. Balisok*, 520 U.S. 641, 643, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

Attached to Maier's Complaint is a 1996 Record of Minute Book Entries indicating he was sentenced as a persistent felony offender. (Dkt. 2-1, p. 6). Maier asserts this designation was based in part on the criminal history allegedly fabricated by Defendant Light. Maier does not allege, however, the sentence has been revoked, declared invalid, expunged, or called into question. A determination by this Court that Maier's criminal history was falsified by Defendant Light would necessarily imply the invalidity of that persistent felony designation, and thus run afoul of the *Heck* doctrine.

Accordingly, Maier's claims regarding his false criminal history are *Heck*

barred and as such Maier has failed to state a claim upon which relief may be granted.

## 2. Statute of Limitations

The *Heck* bar aside, all claims regarding the allegedly false criminal history are also barred by the applicable statute of limitations. The United States Supreme Court in the matter of *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here), determined that the applicable statute of limitations for claims filed pursuant to 42 U.S.C. § 1983 is the state statute of limitations governing personal injury actions. In Montana, that period is three years after the action accrues. *Mont. Code. Ann.* § 27-2-204(1).

According to the Complaint, Defendant Light falsified Maier's criminal history in 1996 when seeking a persistent felony designation against Maier. Maier indicates he did not "notice" this until recently. But Maier acknowledges in his Complaint that his attorney raised the issue of the inaccuracies in Maier's criminal history at his 1996 sentencing. (Dkt. 2, p. 13). In addition, Maier is challenging the persistent felony designation in a habeas petition filed in the Montana Supreme Court on April 14, 2011. (Montana Supreme Court Docket, OP 11-0211). In that petition, Maier indicates his attorney objected to the use of his sealed juvenile

record to enhance his sentence with persistent felony offender status at his sentencing, this including criminal falsifying of the dates of same. Lastly, Maier attached a copy of his April 2005 Executive Clemency Report to his Complaint which lists a 1984 felony theft conviction. That report has Maier's signature on the bottom indicating, "The information on this page is accurate to the best of my knowledge." (Dkt. 2-1, p. 10).

The alleged falsification of Maier's criminal history occurred in 1996 and he knew then or should of known of those inaccuracies at the latest in 2005. Thus, Maier's claims regarding his false criminal history are barred by the applicable statute of limitations.

Therefore, all claims regarding the alleged falsification of Maier's criminal history should be dismissed.

**C. False Psychological Report**

Next, Maier alleges Defendant Mark Mozer, a psychologist at Montana State Prison, wrote a psychological evaluation report and refused to give a copy to Maier. According to Maier, Mozer knew a portion of the report was false but Mozer, with deliberate indifference to Maier, failed to correct the report. Maier asserts the report contributed to him being denied executive clemency on two occasions and being denied timely custody reductions.

8

Dr. Mozer and Craig Thomas are both immune from liability in this case. Court appointed psychologists and parole board officials are entitled to quasi-judicial immunity for performing functions integral to the judicial process. *Stump v. Sparkman*, 435 U.S. 349 (1978); *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir.) *cert. denied*, 545 U.S. 1102 (1981); *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir. 1970) (per curiam) (*quoting Robichaud v. Ronan*, 351 F.2d 533, 536 (9th Cir.1965)), cert. denied, 403 U.S. 908 (1971). There is no material distinction between a psychologist performing an evaluation of a defendant at the direction of a judge, and a psychologist performing the same function at the direction of a parole board. Thus, Dr. Mozer and Craig Thomas are entitled to immunity.

Whether or not the prison or Dr. Mozer are required to give Maier a copy of the report presents an issue of state law as discussed in the Montana Supreme Court's August 17, 2010 decision on Maier's Writ of Mandamus. (Montana Supreme Court OP 10-0294). But this Court is unaware of any authority by which it can order state officials to disclose the report to Maier.

Maier's claim regarding false statements in the report also fails to state a federal claim. The publication of false statements may well raise a state law defamation claim but an allegation of false statements, without more, does not state a claim under 42 U.S.C. § 1983, even when those statements are made under color

of state law.  *See Paul v. Davis*, 424 U.S. 693, 701-10, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *see also Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (claim of slander by police officer may allege tort claim in state court, but is not cognizable in federal court because there is no violation of a federally protected right).  This rule derives from the fact that a person's reputation, standing alone, is not a liberty or property interest protected by due process-i.e., an interest sufficient to give rise to a federal civil rights action-unless it is accompanied by "some more tangible interests." *Paul*, 424 U.S. at 701.  While Maier alleges the false statements lead to the denial of clemency and custody reductions, as will be discussed there is no liberty interest in clemency or custody reductions.

### D.  Due Process

To state a claim for a due process violation, a plaintiff must show (1) that he had a protected liberty interest, and (2) that he was deprived of that interest without adequate due process.  If there is no liberty interest at stake, the Constitution does not require any process, and the second element becomes irrelevant.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995).

### 1.  Clemency

To the extent, Maier is alleging his due process rights have been violated in the course of his clemency proceedings, those allegations fail to state a claim upon which relief can be granted.

"[T]he Constitution . . . does not require the States to enact a clemency mechanism," *Herrera v. Collins*, 506 U.S. 390, 414 (1993), and "an inmate has no constitutional or inherent right to commutation of his sentence." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981) (citation and internal quotation marks omitted). Moreover, "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Dumschat*, 452 U.S. at 464 (footnote omitted). Thus, there is no interest arising from the Due Process Clause itself that a lawfully imposed sentence will be commuted. *Dumschat,* 452 U.S. at 465. Rather, an individual's liberty interest in release is extinguished by the conviction and sentence. *Dumschat*, 452 U.S. at 464. And an appeal for clemency, "is simply a unilateral hope." *Dumschat*, 452 U.S. at 465.

A state may create a protected liberty interest "in statutes or other rules defining the obligations of the authority charged with exercising clemency." *Dumschat*, 452 U.S. at 465. But the Montana clemency statute sets forth no criteria for granting clemency. It simply says, "The governor may grant clemency

in the form of: (i) the remission of fines or forfeitures; (ii) the commutation of a sentence to one that is less severe; (iii) respite; or (iv) pardon." Mont. Code Ann. § 46-23-301(1)(a). Montana has not created a protected liberty interest in clemency.[1]

Although the issue has not been addressed by the Ninth Circuit, it seems apparent that any challenge to Maier's continued incarceration based upon the denials of clemency would also be barred by the *Heck* doctrine discussed above. In *Butterfield v. Bail*, 120 F.3d 1023 (9th Cir. 1997), an inmate seeking parole brought a § 1983 damages claim alleging his due process rights were violated by a parole board's reliance on false information contained in his prison file to find him ineligible for parole. The panel held that a "challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement." *Butterfield*, 120 F.3d at 1024.

> Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole. This is true whether the denial is alleged to be improper based upon procedural defects in the parole hearing or upon allegations that parole was improperly denied on the merits. Appellant's civil claim for damages amounts to a collateral attack on his denial of parole and subsequent incarceration. *Heck* does not permit this.

---

[1] In a concurring opinion in *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1988), Justice O'Connor, joined by Justices Souter, Ginsburg and Breyer, concluded that a prisoner under a death sentence maintains a "life interest" justifying "some minimal procedural safeguards" in clemency proceedings. Since Maier is not facing a death sentence, these due process concerns do not apply.

*Butterfield*, 120 F.3d at 1024.

Maier is challenging the denial of clemency as opposed to the denial of parole, but that fact alone is insufficient to distinguish *Butterfield*. Maier complains that the 2005 psychological report is based upon false information and contributed to him being denied executive clemency. His challenge to the denial of clemency is a challenge to continued detention and is thus barred by *Heck*.

As such, any claims regarding the denial of clemency will be recommended for dismissal.

### 2. Custody Reductions

In the prison setting, a liberty interest is recognized and protected only if state officials or employees take actions that either (1) affect the sentence imposed upon conviction in an unexpected manner, or (2) impose a hardship that is atypical and significant in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Whether a hardship is "atypical and significant" depends on three factors:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint

> imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (citing *Sandin*, 515 U.S. at 486-87); *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (holding that inmate was not deprived of a liberty interest where he was placed at a higher security level than indicated by calculation under controlling prison regulations).

In Maier's case, the threshold requirement for showing a liberty interest in custody reductions is not met. Maier was convicted of attempted deliberate homicide and in June 1996 was sentenced to 80 years with no parole eligibility for 32 years. (Dkt. 2-1, p. 2). "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum*, 427 U.S. at 225. Consequently, placement in any part of a Montana prison would not affect the sentence in an unexpected manner. Therefore, the first prong of the *Sandin* test for a liberty interest is not met.

The second prong of the *Sandin* test is also not met. Maier is only claiming that he has been denied custody reductions, he does not allege that his current custody level is atypical or significant in comparison to other inmates at Montana State Prison. *See Sandin*, 115 S.Ct. at 2301 (30 days disciplinary segregation not "atypical" where no evidence that difference from other kinds of segregation).

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court held that placement in a supermax prison gives rise to a liberty interest. However, the Court noted that prison conditions where lights are on 24 hours a day, and exercise is permitted only for one hour per day in a small indoor room would likely apply to most solitary confinement facilities and probably would not, under *Sandin*, give rise to a liberty interest. *See id*. at 223-24. The crucial facts which led to a finding of a liberty interest in *Wilkinson* were (1) that inmates were deprived of "almost all human contact, even to the point that conversation is not permitted from cell to cell"; (2) that placement was for an indefinite period of time, with yearly review; and (3) that inmates lost their parole eligibility. *Id*. Maier has not alleged any facts remotely comparable.

Because Maier has failed to show he had a liberty interest in a lower custody level, he fails to state a claim for relief under the Due Process clause.

## IV. CONCLUSION

As set forth above, Maier's claims fail to state a claim upon which relief may be granted. These are not defects which could be cured by amendment. Accordingly, Maier's Complaint should be dismissed with prejudice.

### A. "Strike" under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act prohibits prisoners from bringing forma

15

pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim. 28 U.S.C. § 1915(g). This case should be designated as a "strike" under this provision because Maier has failed to state a claim upon which relief may be granted.

### B. Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

> [A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
> (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed. R.App. P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one. See *Coppedge v. United States*, 369 U.S. 438, 445 (1962). A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977) (quoting *Coppedge*, 369 U.S. at 445). For

purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke*, 490 U.S. at 325, 327; *Franklin v. Murphy*, 745 F.2d 1221, 1225 (9th Cir. 1984).

The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact. The finding that Maier's claims fail to state a claim upon which relief may be granted is so clear no reasonable person could suppose an appeal would have merit. Therefore, this Court will certify that any appeal of this matter would not be taken in good faith.

Accordingly, the Court issues the following:

## ORDER

1. Maier's Motion for Leave to Proceed in forma pauperis (Dkt 1) is **GRANTED.** The Clerk of Court shall waive prepayment of the filing fee. Maier is hereby assessed an initial partial filing fee of $51.45.

2. The Clerk shall edit the text of the docket entry for the Complaint to remove the word "LODGED" and the Complaint is deemed filed on April 6, 2011.

3. At all times during the pendency of this action, Maier SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date. Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and

its effective date, except if Maier has been released from custody, the notice should so indicate. The notice shall not include any motions for any other relief. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1. Maier's Complaint should be dismissed with prejudice for failure to state a claim upon which relief may be granted. The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) based upon Maier's failure to state a claim.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. Maier's failure to state a claim is so clear no reasonable person could suppose an appeal would have merit. The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact.

# NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Maier may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. As this deadline allows a party to act after the Findings and Recommendations is served, it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.

Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 17th day of May, 2011.

                                                /s/ Jeremiah C. Lynch
                                                Jeremiah C. Lynch
                                                United States Magistrate Judge